## THE EMPIRE STATE TYPE FOUNDING COMPANY, Appellant, *v.* HUGH J. GRANT, Sheriff, etc., Respondent.

*Attachment — the interest of an equitable mortgagor cannot be enforced by replevin against the sheriff — the value of the chattel, at the time of the trial, without reference to the equitable mortgage, must be fixed by the report or decision — Code of Civil Procedure, sec. 1726.*

In March, 1886, the plaintiff agreed to sell to one Tremelling two printing presses and a quantity of printers' supplies for the price of $1,100, $500 to be paid in cash upon the completion of the delivery and the balance by giving a chattel mortgage on the property. While the plaintiff was making the delivery, which was not completed for some fifteen or sixteen days, Tremelling paid $250 on account of the $500 cash. After the delivery had been completed the plaintiff endeavored, but without success, to find Tremelling, and on the following day learned that he had absconded, and that the defendant, the sheriff, had taken possession of the goods by virtue of an attachment issued against him.

Upon the trial of this action, brought by the plaintiff to replevy the goods, the court directed a verdict in favor of the defendant.

*Held,* that it did not err in so doing as the goods were sold on credit to the extent of the $500, which was not to be paid until the delivery was completed.

That, although the vendor might have an equitable lien to the extent of the mortgage which was to have been given, yet the mortgagor was the owner and had an interest in the property upon which the sheriff could levy, and which justified him in taking possession of the property.

Upon the trial the only evidence given as to the value of the property was the affidavit of the plaintiff, as to its value, made in the proceedings in which the property was replevied.

*Held,* that the court did not err in directing the jury to assess the value of the property at the value stated in the affidavit. (Daniels, J., dissenting.)

That its right so to do was not affected by the fact that the plaintiff had an equitable mortgage on the property, and that the sheriff could only sell the equity in the property owned by Tremelling. (Daniels, J., dissenting.)

Appeal from a judgment in favor of the defendant, entered upon the verdict of a jury rendered under direction of the court.

*George W. Stephens,* for the appellant.

*W. Bourke Cockran,* for the respondent.

Van Brunt, P. J.:

This action was brought to recover the possession of a quantity of personal property which the defendant as sheriff claimed to hold

under an attachment issued against the property of one Tremelling and which the plaintiff claimed was its property. It appears that in March, 1886, the plaintiff agreed to sell, to Tremelling, two printing presses and a quantity of printers' supplies, for the price of $1,100 to be paid for, $500 in cash upon the completion of the delivery and the balance by giving a chattel mortgage on the property. The plaintiff then commenced to make the delivery, and fifteen or sixteen days elapsed before the delivery was complete, it being necessary to set up the presses and shafting. When the delivery was about half completed Tremelling paid $250 on account of the $500 cash. After the delivery had been completed the plaintiff endeavored to find Tremelling, but without success, and on the following day learned that he had absconded and that the sheriff had taken possession of the goods by virtue of an attachment issued against Tremelling. Demand was then made upon the sheriff to surrender possession, and thereupon this action was commenced and the goods replevied by the coroner. Upon the trial of the case the court directed a verdict in favor of the defendant, and upon like direction the jury assessed the value of the property as of the amount stated in the affidavit upon replevin.

The question presented in this case is as to whether the title to the property passed to the vendee upon delivery, or whether there was an implication contained in the agreement testified to, that the title was not to pass until payment was made in the manner agreed upon. It is conceded that in the contract made there was no agreement but that the title should pass upon delivery and the rule applicable to cases of this description is, that the vendor by parting with the possession of his property loses all claim to a vendor's lien unless there is an agreement between the parties preventing the passing of the title until the purchase-price has been paid.

It is urged upon the part of the plaintiff that the jury had a right to infer that there was such an agreement from the nature of the contract of sale. This would be undoubtedly true were it not for the testimony of the witness who made the bargain and the only witness produced by the plaintiff. Upon being examined in regard to the terms of the contract, he was questioned as to what the general rule was upon the sale of goods of this description where the purchase-price was only paid in part, and his testimony was that

the rule was to take a chattel mortgage upon the property to secure the payment of the balance. He was asked whether these goods were sold according to the general rule, and his reply was that they were. He was then asked :· " Q. You didn't make an exception in this case from any other goods you sold on credit? A. No sir. Q. You sold your goods to him on credit the same as to anybody else? A. Naturally. Q. Did you make any inquiries as to whether this gentleman was solvent? A. I did."

And he further testified that the inquiries which he made were satisfactory to his judgment. This evidence clearly shows that there was no intention upon the part of the vendor to retain the title of the goods until the purchase-price had been paid. They were sold on credit. It is true that the vendor intended that the credit should be a short one, but nevertheless there was no understanding between the parties or which could be predicated upon the agreement as testified to by this witness, that the title should not pass until the purchase-price had been paid. It may be all very true that the vendor had an equitable lien to the extent of the mortgage, and that the credit was not given to that extent, but above the mortgage Tremelling was the owner and had an interest in the goods upon which the sheriff could levy, and justified his taking possession of the property. Under these circumstances replevin would not lie, because the sheriff had the right to the possession of the goods in order to sell Tremelling's interest therein subject to the lien of the equitable mortgage.

The objection that it was error on the part of the court to direct the jury to assess the value of the property at the price agreed to be paid therefor because no evidence of value had been given is not well taken. The affidavit upon the replevin was before the court, and was proved and sworn to by the plaintiff as to the value of the property, and this proof uncontradicted was sufficient to justify the direction of the court, it being an admission of the highest character. Nor was it error to assess the full value of the property because the plaintiff had an equitable mortgage thereon and all that the sheriff could sell was the equity in the property owned by Tremelling. Section 1726 of the Code provides that a verdict report or decision in an action for a chattel, where it awards to the prevailing party a chattel which has been

replevied, must fix the value of the chattel at the time of the trial, except in the cases mentioned in section 1727, both of the subdivisions of which section are predicated upon the fact that the plaintiff is the general owner of the chattel, which was not the fact in the case at bar.

There seems to have been no error committe and the judgment appealed from should be affirmed, with costs.

BRADY, J.:

The sheriff could lawfully levy upon the property in dispute and sell the interest of the debtor in it, subject to the plaintiff's lien. I concur in this view, and that the judgment should be sustained to that end.

DANIELS, J. (dissenting):

The action was replevin to recover the possession of two printing presses, a quantity of type and other printers' supplies, machinery and fixtures, sold and delivered by the plaintiff to Guy Tremelling in the early part of March, 1886. The sale was made pursuant to an agreement that $500 should be paid upon the purchase, in cash, and the residue, amounting to a still larger sum, should be secured by a chattel mortgage upon the property, and payable twenty-five dollars, or more, every month. The property was in part delivered, when the purchaser paid the sum of $250 in cash upon it, and promised to pay a like sum shortly afterwards. The residue of the property sold was delivered, and when it was all in, the plaintiff's president went to the office of Mr. Tremelling for the residue of the cash and the mortgage. Tremelling was not there, but was found to have absconded, and on the next day it was stated that the property had been attached by the sheriff, under an attachment issued in favor of William Scott against Tremelling. Upon these facts appearing through the evidence, the court directed a verdict for the defendant, assessing the value of the property at $1,100.95, as that was stated in the complaint. This direction of a verdict in favor of the defendant was probably regular, for the reason that the attaching creditor had the right under his attachment to seize and appropriate the interest of Tremelling in the property. And he had acquired an interest to the extent of $250, the amount paid by him on the purchase-price, and the partial delivery of the

property by the plaintiff to him; and if the property had been worth more than the purchase price, the excess in value would be likewise 'available in favor of the attaching creditor. But as by the terms of the sale $250 was still to be paid in cash upon the price, and a mortgage given to secure the residue, the plaintiff was entitled to a lien upon the property as a security for the performance of these stipulations. They were conditional in their nature, requiring their performance before the absolute and unqualified title to the property would vest in the purchaser. (1 Pars. on Con. [6th ed.] 537, 538; *Husted* v. *Ingraham*, 75 N. Y., 251, 257.) And this lien, as long as it was not waived, would exist not only against the purchaser himself, but also against other persons not *bona fide* purchasers from him for value. (*Comer* v. *Cunningham*, 77 N. Y., 391.)

There was no waiver of this lien by any delay or credit being given to the purchaser, for the vendee sought him at his office to obtain the fulfilment of the agreement as soon as the property had been all delivered. And it would therefore be an unwarrantable construction to be placed upon his acts, to presume that he intended to dispense with the immediate performance of any part of the agreement by the purchaser. This lien of the vendor was a special property in the goods and it was the duty of the court to sustain it in his favor, and the plaintiff could not be deprived of it by the seizure of the property under an attachment for a debt owing by the purchaser. For under such process the creditor can seize no more than the title and interest of his debtor in the goods. And when the plaintiff failed to maintain the action for the recovery of the possession of the property, their assessed value in favor of the defendant as the representative of the attaching creditor should, for that reason, not have exceeded the value of the interest of the purchaser in the goods.

The court seems to have taken a different view of the rights of the parties under the language of section 1726 of the Code of Civil Procedure, which has directed, generally, where the verdict awards to the prevailing party the chattel which has been replevied and afterwards delivered by the sheriff to the unsuccessful party, or to a person not a party, it must also, except in a case specified in the next section, fix the value of the chattel at the time of the trial.

The next section so referred to does not expressly include this case, although in its second subdivision, it proceeds upon a principle which will entitle the successful party to no more than the value of his interest in the property, where the defeated party also has a special property in the articles.   But while the first section which has been mentioned directs the verdict, report or decision, to fix the value of the chattel at the time of the trial, it could not have been designed that it should be literally construed, but must have been intended to be adapted to the peculiar features of the cases arising under it, and to have expressed in greater brevity than it should have done, what the value of the chattel was designed to be, which is mentioned in the section.   It may very well be satisfied by requiring the verdict, report or decision, to fix no more than the value of the interest of the successful party in the chattel, whatever they may prove to be.   It is not unfrequent that statutes are enacted with these elliptical defects.   And this omission should be supplied in this instance by construction. For it cannot be supposed that the Legislature designed by this section to oblige the unsuccessful party not only to respond for the interest of his adversary in the property, but pay over to him the value of his own interest also.   That would be excessively unjust, and while it may be within the letter of the statute, it should not be presumed to be within its spirit which it is well established must control its direction.   The Revised Statutes provided in general and more flexible language what should be done upon the recovery of a verdict in an action of replevin.   Where the plaintiff succeeded, he was declared to be entitled to a judgment for damages and costs, as well as for the delivery of the property to him, where that had not previously been made, or in default thereof to recover from the defendant the value of such goods and chattels as the same shall have been assessed by the jury on the trial, or upon the writ of inquiry.   When the defendant recovered in such action he was entitled to a return of the goods and chattels replevied, and also the damages sustained by him by reason of the detention of such goods and chattels.   (3 R. S. [6th ed.], 836, §§ 13, 16.)

The Code of Procedure in its enactment by section 277, seems to have been designed to group together the substance of these sections of the Revised Statutes, which in a case where the defendant recov-

ered, it was declared that the judgment should be for a return of the property, or the value thereof, in case a return could not be had, and damages for taking and withholding the same. This provision as to the value of the property was as mandatory as that which is now contained in the Code of Civil Procedure, and a like rule was applied to the case of a successful plaintiff. The assessment in each case beyond the damages for detention was directed to be for the value of the property. Yet it has been held by the courts by way of construing these several statutory provisions, that when the plaintiff recovered on a special title or interest in the property replevied, against the general owner, that the value to be assessed should be restricted to the value of that special interest. (*Fitz-hugh* v. *Wiman*, 5 Seld., 559; *Townsend* v. *Bargy*, 57 N. Y., 665; *Allen* v. *Judson*, 71 id., 77.) It is true that this principle was not applied in *Buck* v. *Remsen* (34 N. Y., 383), but the point of its application was only passingly mentioned in the decision, and it is accordingly entitled to no special weight against these other cases. This rule has been very generally applied in controversies over the title to personal property, and actions for its conversion have, therefore, been considered to be within its control. (*Parish* v. *Wheeler*, 22 N. Y., 494, 511, 512.) It is not only just and equitable, but a different rule would be strikingly unjust, for it would have the effect of arbitrarily taking one person's property, without any reason for it, and giving it to another. It is true that the cases which have been cited applied the rule only in favor of the plaintiff, but that does not deprive them of their effect as sustaining the application of an equally sound rule of law to the action when it may be determined in favor of the defendant, for the rights of the defendant, under the Revised Statutes and under the Code of Civil Procedure, were cared for and provided for by language similar in its effect. If the plaintiff recover the value to be assessed is, by the Code of Procedure, directed to be the value of the property, and if the defendant recovers it is still the same direction to assess the value of the property. And as the courts have heretofore applied this principle of construction to the cases of successful plaintiffs there is precisely the same reason for applying it to the case of a successful defendant, and the Code of Civil Procedure, using nearly the same language, should be construed in the same way. That will

secure no other than a just result, which must have been within the intention of the legislature.

The plaintiff can derive no benefit from the omission in the proof that the notice mentioned in section 1725 of the Code of Civil Procedure was not proven to have been served by the defendant's attorney, for no objection to its omission was taken during the trial, when proof of the fact might have been supplied if it had been important. The case was, on the contrary, tried upon the rights and interests of the respective parties in the property as they appeared and were supported by the evidence and the application of the law to such rights, and it is now too late to gain any advantage by the absence of proof of a compliance with this section. But as the assessment of the value of the property was unwarranted by the proof beyond the interest or right which the sheriff had acquired in it under the attachment, which did not exceed the value of the interest of the purchaser, the judgment should be reversed and a new trial ordered, with costs to abide the event, unless within twenty days after notice of the decision the defendant stipulates to reduce that verdict to the sum of $250, with interest thereon from the commencement of the action and the additional allowance of costs should be reduced in a corresponding manner. If such stipulation shall be served, then the judgment as so reduced will be affirmed, without costs of the appeal to either party.

Judgment affirmed, with costs.